**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Certificateholders of Harborview Mortgage Loan Trust 2005–08, Mortgage Loan Pass-Through Certificates, Series 2005–08,<br><br>Plaintiff,<br>vs.<br><br>HERITAGE ESTATES HOMEOWNERS ASSOCATION, *et al.*,<br><br>Defendants. | Case No.: 2:16-cv-01385-GMN-CWH<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 80), filed by SFR Investments Pool 1, LLC ("SFR"). Heritage Estates Homeowners Association ("HOA") and U.S. Bank National Association ("Plaintiff") filed Responses, (ECF Nos. 82, 88), and SFR filed a Reply, (ECF No. 89).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 87), to which SFR and HOA responded, (ECF Nos. 90, 93), and Plaintiff replied, (ECF No. 97).

Also before the Court is HOA's Motion for Summary Judgment, (ECF No. 92). SFR and Plaintiff filed Responses, (ECF Nos. 99, 104), and HOA filed a Reply, (ECF No. 107).[1]

---

[1] Also pending is SFR's Motion to Strike, (ECF No. 113), requesting that the Court disregard Plaintiff's Reply in Support of its Notice of Supplemental Authority, (ECF No. 112).

Plaintiff's Notice of Supplemental Authority, (ECF No. 110), consists of an attached Nevada Supreme Court decision and a single-page summary of the same. SFR filed a 15-page responsive brief, (ECF No. 111), addressing various arguments outside the scope of Plaintiff's supplement. The Court finds that considerations of fairness counsel in favor of allowing Plaintiff to address SFR's arguments. Accordingly, for good cause appearing, the Court will consider Plaintiff's Reply in Support of its Notice, (ECF No. 112), in addition to SFR's Response, (ECF No. 111), and deny SFR's Motion to Strike.

For the reasons discussed below, Plaintiff's Motion for Summary Judgment is **GRANTED** and SFR and HOA's Motions for Summary Judgment are **GRANTED in part** and **DENIED in part**.

I. **BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 5928 Gulf Island Avenue, Las Vegas 89156 (the "Property"). (*See* Deed of Trust, Ex. A to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 87-1). On May 23, 2005, Tadeusz and Danuta Chorzepa ("Borrowers") purchased the Property by way of a loan in the amount of $215,000 secured by a deed of trust (the "DOT"). (*Id.*). Plaintiff gained beneficial interest in the DOT through an assignment recorded on October 20, 2011. (*See* Assignment, Ex. B. to Pl.'s MSJ, ECF No. 87-2).

Upon Borrowers' failure to stay current of their payment obligations, Nevada Association Services ("NAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment lien and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. D to Pl.'s MSJ, ECF No. 87-4); (Notice of Default, Ex. E to Pl.'s MSJ, ECF No. 87-5).

On December 17, 2012, the law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of Plaintiff's loan servicer, Bank of America, N.A. ("BANA"), sent a letter to NAS requesting a ledger identifying the amount of HOA's superpriority lien. (*See* Request for Accounting, Ex. 1 to Miles Aff., Ex. G to Pl.'s MSJ, ECF No. 87-7). Because NAS did not respond with the ledger or the amount of HOA's lien, BANA calculated what it determined to be the lien amount based upon an accounting ledger for another property in the community. (*See* Statement of Account, Ex. 2 to Miles Aff., ECF No. 87-7). Miles Bauer, on behalf of BANA, subsequently delivered a check to NAS for $845.73. (*See* Tender Letter, Ex. 3 to Miles

Aff., ECF No. 87-7); (*see also* Rock Jung Dep. 42:19–43:5, Ex. E to HOA's MSJ, ECF No. 92-5).

Notwithstanding the alleged tender, NAS proceeded with the foreclosure by recording a notice of foreclosure sale and subsequently foreclosing on the Property. (*See* Notice of Trustee's Sale, Ex. F to Pl.'s MSJ, ECF No. 87-6). On August 5, 2013, SFR recorded a foreclosure deed stating it purchased the Property for $17,000. (Foreclosure Deed, Ex. H to Pl.'s MSJ, ECF No. 87-8).

Plaintiff filed the instant Complaint on June 17, 2016, asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 29–81). On August 25, 2016, SFR filed crossclaims and counterclaims against Plaintiff and Borrowers, respectively, for quiet title and injunctive relief. (*See* Answer 14:5–15:12, ECF No. 19).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiff and SFR move for summary judgment on their competing quiet title claims. (*See* Pl.'s MSJ, ECF No. 87); (SFR's Mot. Summ. J. ("SFR's MSJ"), ECF No. 80). Plaintiff argues that its first DOT continues to encumber the Property because: (1) the statute governing the foreclosure sale is facially unconstitutional;[2] (2) Plaintiff's loan servicer, BANA, satisfied the HOA superpriority lien by tendering payment of $845.73 to NAS; and (3) the Property's grossly inadequate sale price and corresponding irregularities in the foreclosure process were sufficiently unfair as to warrant the sale's invalidation. (*See* Pl.'s MSJ 7:4–9:8, 12:4–17:19, 23:24–27:13).

In turn, SFR asserts the HOA foreclosure sale was validly conducted and consequently caused the extinction of Plaintiff's DOT. (SFR's MSJ 15:13–19:17). SFR also argues that Plaintiff, as lienholder, is neither entitled to an equitable remedy nor a right of redemption. (*Id.* 18:23–20:12). Finally, SFR claims that its status as a bona fide purchase for value defeats

---

[2] Plaintiff and SFR previously filed motions for summary judgment, (ECF Nos. 35, 37), solely premised upon the Ninth Circuit's holding in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017). The Court denied the motions explaining that in light of the Nevada Supreme Court's opinion in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018), *Bourne Valley* is no longer controlling authority with respect to its interpretation of NRS Chapter 116's notice provisions and, consequently, its finding of facial unconstitutionality. (*See* Order 10:2–12:14, ECF No. 106).

Plaintiff's argument and evidence demonstrating Plaintiff's purported tender. (SFR's Resp. to Pl.'s MSJ ("SFR's Resp.") 23:18–25:5, ECF No. 90).

HOA argues that Plaintiff's quiet title claim against it fails because HOA disclaims interest in the Property. (HOA's Mot. Summ. J. ("HOA's MSJ") 8:18–28, ECF No. 92). HOA further asserts that there is no basis to set aside the foreclosure sale because the sale complied with NRS Chapter 116, Plaintiff's purported tender was invalid because it only covered a portion of HOA's delinquency, NAS's rejection of Plaintiff's tender was in good faith, and Plaintiff cannot demonstrate that it suffered damages as a result of HOA's actions. (*Id.* 11:18–22:8).

### A. Tender of the Superpriority Portion of HOA's Lien

Plaintiff claims that BANA's tender of the superpriority amount of HOA's lien to NAS renders the foreclosure sale invalid. (Pl.'s MSJ 12:4–14:12). SFR counters that the Court must disregard Plaintiff's evidence of tender because such evidence is inadmissible under the Federal Rules of Evidence and improper under the Federal Rules of Civil Procedure. (SFR's Resp. 4:25–6:11, ECF No. 90). Specifically, SFR moves to exclude Plaintiff's exhibits and affidavit purporting to demonstrate evidence of tender (collectively the "Miles Bauer Records") on the grounds that the exhibits have not been properly authenticated and Plaintiff failed to identify the exhibits' affiant as a witness in its initial disclosures. (*Id.*).

#### 1. Admissibility of the Miles Bauer Records

SFR argues that Doug Miles's affidavit (the "Miles Affidavit") falls short of properly authenticating the Miles Bauer Records. (SFR's Resp. 5:18–6:11, ECF No. 90). Specifically, SFR contends that Miles cannot authenticate NAS's Statement of Account, (Ex. 2 to Miles Aff., ECF No. 87-7), because it originated from a different entity, concerns an accounting for a property different than the subject Property, and constitutes two layers of hearsay because the accounting figures are derived from HOA's ledger. (SFR's Resp. to Pl.'s Notice of Suppl.

Auth. 2:8–23, ECF No. 111). SFR further argues that another exhibit, the Prolaw Screenshot, (Ex. 4 to Miles Aff., ECF No. 8-7), is inadmissible because the Miles Affidavit fails to set forth how the system operates, how information is stored, who has access, and whether a person reviewing the record can discern if it has been altered. (*Id.* 3:7–18).

Under Federal Rule of Evidence 901(a), "[t]he foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a)). "[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902(11) provides that "a domestic record that meets the requirements of Rule 803(6)(A)–(C)" is deemed to be self-authenticating. Fed. R. Civ. P. 902(11). In turn, Rule 803(6) provides that business records are admissible when two foundational facts are shown: "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985)); *see also* Fed. R. Evid. 803(6).

Here, the Court is satisfied that Miles has sufficiently authenticated the records attached to his affidavit. The Miles Affidavit provides that Miles is managing partner of Miles Bauer, the loan servicer's counsel at the time, and that he personally cross-referenced the information in the affidavit and exhibits with his firm's records to confirm the accuracy of the documents. (*See* Miles Aff., Ex. G to Pl.'s MSJ, ECF No. 87-7). Miles states he is familiar with Miles Bauer's record-keeping policies and that his job responsibilities require him to maintain records in connection with the tender payments to HOA in this case. (*Id.* ¶¶ 4–5). Additionally,

each attached exhibit is identified in Miles's sworn affidavit. (*Id.* ¶¶ 6–10). This is sufficient for a reasonable juror to find that the Miles Bauer Records are what Miles claims them to be.

SFR cites *In re Vee Vinhee*, 336 B.R. 437 (B.A.P 9th Cir. 2005), for the proposition that electronic records must be authenticated by an affiant who testifies to the accuracy of the documents, identifies the chain of custody, and explains the circumstances of the document's preservation. (SFR's Resp. to Pl.'s Notice of Suppl. Auth. 3:7–4:2, ECF No. 111). Preliminarily, as Plaintiff correctly notes, the Ninth Circuit Court of Appeals, as well as courts within the Circuit, have raised questions about the controlling precedential value of bankruptcy appellate decisions. *See In re Zimmer*, 313 F.3d 1220, 1225 n.3 (9th Cir. 2002) (stating "the binding nature of Bankruptcy Appellate Panel decisions" is "an open question in this circuit"); *In re Arnold*, 471 B.R. 578, 590 (Bankr. C.D. Cal. 2012); *In re Grant*, 423 B.R. 320, 321 (Bankr. S.D. Cal. 2010).

To the extent *In re Vee Vinhee* may serve as persuasive authority, the Court is unpersuaded. It appears that the authentication requirements for business records in that case cannot be reconciled with more recent authority confirming the relatively lax requirements for admitting evidence under FRE 803(6). *See, e.g.*, *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ("The business records exception only requires 'someone with knowledge' about the record-keeping, not necessarily an employee of the business or someone with knowledge of how the reports were made or maintained."); *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990); *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015). Under this standard, "it is immaterial that the business record is maintained in a computer rather than in company books." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (affirming district court's admission of payment history summaries maintained in electronic format and compiled in the regular course of business."). *Cf. Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812-ODW-PLA, 2017

WL 5634993, at *3 (C.D. Cal. Oct. 6, 2017) (disallowing admission of computer-generated summaries prepared by an individual that was "not an employee at the relevant time period" and where the report was prepared "for purposes of litigation.").

Additionally, the contents of the two exhibits SFR objects to—the Statement of Account and the ProLaw Screenshot—have been testified to and confirmed by other witnesses in this case. (*See* HOA's 30(b)(6) Dep. 19:18–19, Ex. F to HOA's MSJ, ECF No. 92-6) (stating that HOA's quarterly assessments were $66.00 during the relevant time period); (NAS 30(b)(6) Dep. 20:6–8, 35:7–10, 112-2) (testifying that nuisance and abatement charges were not incurred during the nine months preceding foreclosure); (Rock Jung Dep. 42:19–43:5, Ex. E to HOA's MSJ, ECF No. 92-5) (identifying the ProLaw Screenshot as "the case management system I used at [Miles Bauer]," explaining the meaning of calendar entries in the document, and pointing to an entry signifying that NAS rejected Plaintiff's tender as of January 18, 2013).

These alternative means of proof satisfy the Court that Plaintiff would be able to put forth admissible evidence at trial to demonstrate the facts underlying its purported tender. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("[A]t summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony.").

### 2. Failure to Disclose a Witness

Next, SFR objects to the Miles Bauer Records on the basis that Plaintiff never disclosed its affiant, Miles, as a witness in this case. (SFR's Resp. 4:25–5:16). SFR continues that Plaintiff's disclosures only mention a "corporate designee" for Miles Bauer which, according to SFR, "is meaningless without the identification of the named individual." (*Id.* 4:26–5:1).

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* Fed. R. Civ. P. 26(a). Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit. Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party . . . may use to support its claims or defenses." "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)); Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

To the extent Plaintiff ran afoul of Rule 26 by failing to disclose Miles's name, the Court finds the omission was harmless. Notwithstanding Plaintiff's failure to identify Miles, Plaintiff's second supplement to its initial disclosures, submitted early in discovery, put SFR and HOA on notice that a corporate representative of Miles Bauer would testify to Plaintiff's alleged tender of the superpriority amount. (*See* Pl.'s Second Suppl. Disclosures 4:19–5:4, ECF No. 97-1). The disclosures also expressly name the Miles Bauer Records as documents on which Plaintiff intends to rely. (*Id.* 7:19–20). Even prior to the supplemental disclosures, Plaintiff's Complaint alerted SFR of its theory of this case by repeatedly alleging that NAS rejected BANA's tender. (*See* Compl. ¶¶ 22–25, 44–48, 62). Finally, upon the Court's lifting of the administrative stay in this case,[3] which was in place for over a year, the parties submitted

---

[3] On October 24, 2016, the Court stayed this action pending exhaustion of all appeals in *Bourne Valley*, (ECF No. 56). Following the U.S. Supreme Court's denial of the petition for certiorari in that case, the Court lifted the stay on November 2, 2017, (ECF No. 63).

an amended proposed scheduling order and underwent additional discovery. (*See* Scheduling Order, ECF No. 63).

Thus, the record in this case demonstrates that SFR was on notice of Plaintiff's tender theory from the outset and knew about the Miles Bauer Records over a year before the parties re-entered discovery. While SFR complains that Plaintiff's incomplete disclosures renders SFR "unable to properly protect itself," (SFR's Resp. 5:14–16), the Court cannot discern how SFR was prejudiced in its ability to defend against Plaintiff's allegations when it knew of the Miles Bauer Records as well as the centrality of Plaintiff's tender theory to this case. Significantly, because Miles's testimony is limited to authenticating exhibits that SFR indisputably knew about, Plaintiff's failure to identify him by name did not prejudice SFR's ability to prosecute its case. *See, e.g.*, *Lam v. City & Cty. of San Francisco*, 565 F. App'x 641, 643 (9th Cir. 2014) (affirming district court's finding of harmless error where undisclosed witness declarations "merely authenticated documents already in the record."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1120 (N.D. Cal. 2011), *abrogated on other grounds by Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) (overruling objection where witness's "declaration merely authenticates payroll records and W–2 forms that Plaintiffs already knew existed."); *Riddick v. AT&T*, No. 2:12-cv-02033-KJM-AC, 2017 WL 2214933, at *6 (E.D. Cal. May 19, 2017) (declining to exclude exhibits to records custodian's declaration because the objecting party had access to the "data underlying both declarations during discovery").

### 3. BANA's Tender of the Superpriority Portion of HOA's Lien

Plaintiff argues that BANA's presentment to NAS of a check for nine months' worth of HOA assessments constituted a valid and unconditional tender such that HOA's superpriority lien was extinguished. (Pl.'s MSJ 14:14–17:19). SFR responds that Plaintiff's tender was invalid because the letter accompanying payment contained impermissible conditions. (SFR's

Resp. 8:13–9:25). Additionally, SFR and HOA assert that NAS rejected the purported tender in good faith. (*Id.* 10:2–12:15); (HOA's Resp. to Pl.'s MSJ 8:18–9:2, ECF No. 93).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (2014). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev. 2016). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (2018) (en banc). In addition to full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, Plaintiff has come forward with evidence that Miles Bauer, on behalf of BANA, delivered a letter to NAS accompanied by a check for $845.73. (*See* Tender Letter, Ex. 3 to Miles Aff., ECF No. 87-7); (Rock Jung Dep. 42:19–43:5, Ex. E to HOA's MSJ, ECF No. 92-5). Additionally, HOA's 30(b)(6) witness confirmed that its assessments during the relevant time period amounted to quarterly payments of $66.00, (HOA's 30(b)(6) Dep. 19:18–19, Ex. F to HOA's MSJ, ECF No. 92-6), and NAS's 30(b)(6) designee testified that HOA did not assess any charges for nuisance or abatement. (NAS 30(b)(6) Dep. 20:6–8, 35:7–10, ECF No. 112-2). Therefore, Plaintiff's tender of $845.73 indisputably accounted for amounts well in excess of HOA's $198.00 superpriority lien.

SFR contends that whether NAS received the purported tender is a disputed issue of material fact. (SFR's Resp. 7:26–8:3). According to SFR, NAS's 30(b)(6) witness stated that

NAS never received the tender letter and that the "only evidence [Plaintiff] relies on is in the screenshot which Mr. Miles cannot authenticate." (*Id.*). The Court disagrees.

With respect to NAS's 30(b)(6) witness, the witness plainly stated that "[t]here is no way that I can know," whether the tender was delivered. (NAS 30(b)(6) Dep. 70:1–15, Ex. G to HOA's MSJ, ECF No. 92-7). As to whether anyone at NAS "could verify one way or the other" whether the tender was received, NAS answered "[n]o." (*Id.* 54:1–12, 70:1–15). Indeed, NAS's witness asserted that it would have been routine for NAS to reject any tender that does not account for HOA's entire delinquency and that NAS could have rejected the tender without making a record of it. (*Id.* 55:1–56:20, 70:9–25). Thus, the witness did not, as SFR contends, claim that NAS did not receive Plaintiff's tender. As to the ProLaw Screenshot, even assuming the Miles Affidavit is insufficient to authenticate this record, Rock Jung, a former Miles Bauer employee, testified to his familiarity with the database and stated that either he, or an assistant acting at his direction, logged the calendar entries appearing in the document. (Rock Jung Dep. 36:1–17, 44:20–22, Ex. E to HOA's MSJ, ECF No. 92-5). The Court concludes that Jung's ability to testify about the underlying contents of the ProLaw Screenshot makes the record appropriate for consideration at this stage. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.").

In sum, SFR and HOA have failed to produce competing evidence showing that Plaintiff miscalculated the superpriority lien amount, the lien included nuisance and abatement charges, or that Plaintiff never delivered the tender letter and accompanying check. The remaining question, therefore, is whether Plaintiff's tender was either unconditional or with conditions on which Plaintiff had the right to insist.

Plaintiff's Tender Letter, in relevant part, contains the following language:

> Therefore, our client has authorized us to make payment to you in
> the amount of $845.73, which takes into account both the maximum

> 9 months worth of common assessments as well as reasonable collection costs to satisfy its obligations to HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $845.73. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BANA's financial obligations towards the HOA in regards to the real property located at 5928 Gulf Island Avenue have now been "paid in full."

(Tender Letter, Ex. 3 to Miles Aff., ECF No. 87-7).

SFR argues there is a disputed issue of material fact as to the tender's validity because the tender letter is impermissibly conditional. (*See* SFR's Resp. 8:13–9:25, ECF No. 90). SFR asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*Id.* 8:23–9:24). Further, SFR contends that NAS's rejection of Plaintiff's payment was made in good faith given the fluidity of Nevada foreclosure law during the relevant time period. (*Id.* 10:1–12:15).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and otherwise valid.[4] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the

---

[4] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which Plaintiff had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

SFR argues, however, that this condition is "especially egregious" because Plaintiff "does not even acknowledge that an association has a superpriority portion of its lien for any amounts that constitute abatement charges." (*See* SRF's Resp. 8:23–27). According to SFR, because the letter omits any reference to abatement charges and expressly notes that the check applies solely to nine months of HOA assessments, acceptance of the tender would force HOA to waive a portion of its superpriority lien. (*Id.* 9:9–25).

Preliminarily, this Court, as well as other courts in this District have considered virtually identical language and nonetheless concluded that the tenders were valid and unconditional. *See, e.g.*, *Bank. of Am., N.A. v. Lake Mead Homeowners' Ass'n*, No. 216-cv-00504-GMN-NJK, 2019 WL 208864, at *9 (D. Nev. Jan. 15, 2019) (ECF No. 83-7); *Bank of Am., N.A. v. Falcon Point Ass'n*, No. 2:16-cv-00814-GMN-CWH, 2018 WL 4682317, at *5 (D. Nev. Sept. 28, 2018) (ECF No. 110-3); *Bank of Am., N.A. v. Toscano River Townhomes Ass'n, Inc.*, No. 3:16-cv-00196-RCJ-VPC, 2017 WL 2259985, at *3 (D. Nev. May 23, 2017) (ECF No. 30-6); *U.S. Bank, N.A. v. Emerald Ridge Landscape Maint. Ass'n*, No. 2:15-cv-00117-MMD-PAL, 2016 WL 7826665, at *3 (D. Nev. Sept. 30, 2016) (ECF No. 40-8).

In this case, because there is no genuine dispute that maintenance and abatement charges were not incurred during the relevant time period, acceptance of the letter's facts in this regard would not "force the association to waive a portion of its superpriority lien" as SFR urges. (*See* SFR's Resp. 9:14–20). On this point, SFR contends that it is irrelevant whether abatement charges were assessed because these charges "can arise at any time during the delinquency process," and such charges are "are not temporally limited." (*Id.* 9:14–22 n.6). Contrary to SFR's assertion, however, an HOA's superpriority lien applies exclusively to the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges. *Prop. Plus*

*Invs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 401 P.3d 728, 730 (Nev. 2017). Therefore, new charges would not factor into an HOA's superpriority lien absent a new notice of delinquent assessments.

Last, SFR and HOA argue that NAS's rejection was in good faith because Nevada foreclosure law during the relevant time period "was unsettled as to what amounts were included in the superpriority portion of the lien." (HOA's Resp. 8:18–9:2, ECF No. 93); (SFR's Resp. 11:14–17). Additionally, SFR argues that the letter's language appears to "absolve [Plaintiff] from any future payments in the event it obtained title," and Plaintiff would never again be obligated to make any payments towards the Property. (*Id.* 11:25–12:3).

With respect to Defendants' arguments concerning legal uncertainty, the Court finds these contentions unpersuasive. An HOA's subjective belief and lack of bad faith are "legally irrelevant," because a valid tender satisfies "the default as to the superpriority portion of the HOA's lien by operation of law." *Pawlik v. Bank of New York Mellon*, No. 71681, 2018 WL 6617724, at *1 (Nev. Dec. 11, 2018) (unpublished); *Sage Realty LLC Series 2 v. Bank of New York Mellon*, No. 73735, 2018 WL 6617730, at *1 (Nev. Dec. 11, 2018) (unpublished). Moreover, responding to this same line of argument, the Nevada Supreme Court stated "a plain reading of NRS 116.3116 indicates that at the time of Bank of America's [2012] tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, the issue was not undecided." *Bank of Am.*, 427 P.3d 113, 118 (2018). In a prior opinion, the Nevada Supreme Court arrived at the same conclusion explaining "we are not persuaded that this was a justifiable basis [for rejection] in light of the explanations contained in the letters sent by [plaintiff's] agent setting forth [plaintiff's] legal position." *BAC Home Loans Servicing, LP v. Aspinwall Court Tr.*, No. 69885, 422 P.3d 709, 2018 WL 3544962, at *1 (Nev. July 20, 2018) (unpublished).

Based upon this authority, the Court finds that the purported unsettled nature of Nevada law during the relevant time period does not establish sufficient justification for rejection of Plaintiff's tender. This conclusion is bolstered by the fact that Plaintiff's tender letter, as well as the preceding letter requesting an accounting, provided explanation of Plaintiff's legal position, as well as citations to pertinent statutory authority. (*See* Request for Accounting, Ex. 1 to Miles Aff., Ex. G to Pl.'s MSJ, ECF No. 87-7); (*see also* Tender Letter, Ex. 3 to Miles Aff., ECF No. 87-7).

Finally, the Court rejects SFR's argument that NAS rejected the tender in good faith because the tender letter purports to absolve Plaintiff of any future liability it may have to HOA. The Court is in accord with the Nevada Supreme Court that the letter's reference to "facts stated herein," immediately preceding the language about Plaintiff's obligations being "paid in full," can only be reasonably interpreted as applying to the underlying foreclosure proceeding. *See Sage Realty*, 2018 WL 6617730, at *1 ("The letter refers to 'the facts stated herein,' which can only be reasonably construed as contemplating the underlying foreclosure proceeding and not a future scenario in which BNYM might again need to cure a default as to the superpriority portion of the HOA's lien to protect its first deed of trust."); *Deutsche Bank Nat'l Tr. Co. v. Premier One Holdings, Inc.*, 431 P.3d 55 (Nev. 2018) (unpublished) (same); *Fiducial, LLC v. Bank of New York Mellon Corp.*, No. 71864, 2018 WL 6617727, at *2 (Nev. Dec. 11, 2018) (same).

### 4. SFR's Status as a Bona Fide Purchaser

Because Plaintiff satisfied the HOA superpriority lien, SFR cannot prevail even if the Court were to find it was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a

purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of Plaintiff's unconditional tender, SFR's status as a bona fide purchaser is immaterial.

Based upon the foregoing, the Court concludes that Plaintiff's tender satisfied HOA's superpriority lien and thus invalidated the ensuing sale to the extent it extinguished Plaintiff's DOT. While the sale remains intact, Plaintiff's DOT continues to encumber the Property and SFR's interest is subject to this encumbrance. Accordingly, Plaintiff's Motion for Summary Judgment, as to its quiet title claim, is granted. The Court denies SFR's Motion with respect to its quiet title claim against Plaintiff and HOA's Motion as to Plaintiff's quiet title claim.

### B. SFR's Quiet Title Claim Against Borrowers

SFR seeks summary judgment on its quiet title claim against Borrowers on the basis that "it obtained title of the unit's owners without equity or right of redemption" by purchasing the Property. (SFR's MSJ 20:13–19, ECF No. 117). Because the Court holds that the sale remains intact and given SFR's evidence of its interest in the Property relative to that of Borrowers', SFR's Motion against Borrowers is granted to the extent Borrowers assert any adverse interest in the Property.[5] *See Bank of Am., N.A. v. Falcon Point Ass'n*, No. 216-cv-00814-GMN-CWH, 2018 WL 4682317, at *8 (D. Nev. Sept. 28, 2018); *Deutsche Bank Nat'l Tr. Co. v. Foothills at S. Highlands Homeowners Ass'n*, No. 2:16-cv-00245-GMN-PAL, 2018 WL 3613984, at *5 (D. Nev. July 27, 2018).

### C. Plaintiff's Wrongful Foreclosure and Injunctive Relief Claims

In its prayer for relief, Plaintiff requests primarily an order declaring that "SFR purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 14:19–20). The other relief requested—with the exception of injunctive relief—is phrased in the

---

[5] As Borrowers have not appeared in this action, SFR has moved for clerk's entry of default, (ECF Nos. 78, 79), which the clerk of court subsequently entered, (ECF No. 81).

alternative. (*See id*. 14:21–15:4). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. Accordingly, the Court dismisses Plaintiff's wrongful foreclosure claim as moot.[6]

As to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim and is therefore dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 87), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 80), is **GRANTED in part** and **DENIED in part**. SFR's Motion, with respect to its quiet title claim against Borrowers is **GRANTED**. SFR's Motion is **DENIED** with respect to its quiet title claim against Plaintiff.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 92), is **GRANTED in part** and **DENIED in part**. HOA's Motion is **GRANTED** as to Plaintiff's claims for wrongful foreclosure and is **DENIED** as to Plaintiff's quiet title claim.

**IT IS FURTHER ORDERED** that SFR's Motion to Strike, (ECF No. 113), is **DENIED**.

The Clerk of Court is instructed to close the case.

**DATED** this __28__ day of January, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[6] In a prior order, the Court dismissed with prejudice Plaintiff's claim for breach of NRS 116.1113. (*See* Order 8:23–9:15, ECF No. 106).